UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE JPMORGAN CHASE
DERIVATIVE LITIGATION

No. 1:17-cv-05066-JFK

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

Stuart J. Baskin
Jaculin Aaron
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022-6069
Tel.: (212) 848-4000
Facsimile: (212) 848-7179
Email: sbaskin@shearman.com
        jaaron@shearman.com

*Attorneys for Defendants James A. Bell;
Crandall C. Bowles; Stephen B. Burke; James S.
Crown; Timothy P. Flynn; Ellen V. Futter;
Laban P. Jackson, Jr.; David C. Novak; Lee R.
Raymond; and William C. Weldon*

Gary W. Kubek
Jennifer R. Cowan
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Facsimile: (212) 909-6836
Email: gwkubek@debevoise.com
        jrcowan@debevoise.com

*Attorneys for Nominal Defendant JPMorgan
Chase & Co. and Defendants James Dimon,
William B. Harrison, Jr., and Robert I. Lipp*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................. 3

ARGUMENT ................................................................................................ 4

    I.      THIS ACTION IS BARRED BY RES JUDICATA AND COLLATERAL
          ESTOPPEL .............................................................................. 4

          A.      Res Judicata Bars Plaintiffs' Claims ......................................... 5

          B.      Collateral Estoppel Precludes Plaintiffs from Relitigating Demand
                  Futility ................................................................................. 9

          C.      The Delaware Court of Chancery's Recent *Wal-Mart* Opinion Is
                  Inapplicable, Inconsistent with Second Circuit Precedent, and
                  Unpersuasive ........................................................................ 12

    II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
          ALLEGE THAT DEMAND ON THE BOARD IS EXCUSED ......................... 15

          A.      Demand Is Required Unless the Complaint Alleges Particularized
                  Facts Raising a Reasonable Doubt That a Majority of the Directors
                  Could Have Independently and Disinterestedly Considered the
                  Demand ............................................................................... 16

          B.      Plaintiffs Fail to Plead That a Majority of the Board Members
                   Lack Independence or Have an Interest in the Transactions at Issue ........ 17

          C.      Plaintiffs Fail to Plead with Particularity that a Majority of the
                   Board Face a Substantial Likelihood of Liability ..................................... 19

               1.      The Complaint Does Not Plead with Particularity a Claim
                         for Breach of the Fiduciary Duty of Care, Which in Any
                         Event Is Barred by the Exculpatory Provision in
                         JPMorgan's Charter .................................................. 20

                 2.      The Complaint Fails To Plead with Particularity That the
                         Director Defendants Face a Substantial Likelihood of
                         Liability for Breach of the Fiduciary Duty of Loyalty Based
                         on a Failure of Oversight .......................................... 21

a.  The Complaint Does Not Allege That JPMorgan "Utterly Failed" To Implement Any System of Internal Controls, But Instead Affirms that Such a System Was in Place ........................................................22

b.  The Complaint Fails To Allege That the Director Defendants Consciously Ignored "Red Flags" .................23

3.  The Complaint Does Not Allege with Particularity That the Director Defendants Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty Based on Alleged Misrepresentations ......................................................................28

4.  Plaintiffs' Remaining State Law Claims Do Not Give Rise to a Substantial Likelihood of Director Liability.........................29

CONCLUSION...................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adamo,*
   560 B.R. 642 (Bankr. E.D.N.Y. 2016) ...............................................................................5

*In re Am. Int'l Grp., Inc. Deriv. Litig.,*
   415 F. App'x 285 (2d Cir. 2011) .....................................................................................17

*In re Am. Int'l Grp., Inc. Deriv. Litig.,*
   700 F. Supp. 2d 419 (S.D.N.Y. 2010)......................................................................... 18, 30

*Stone ex rel. AmSouth Bancorp. v. Ritter,*
   911 A.2d 362 (Del. 2006) ........................................................................................*passim*

*Arduini v. Hart,*
   774 F.3d 622 (9th Cir. 2014) .................................................................................... 11, 13

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) .......................................................................................... 19, 20

*Asbestos Workers Local 42 Pension Fund v. Bammann,*
   2015 WL 2455469 (Del. Ch. May 22, 2015)................................................................9, 13

*Asbestos Workers Phila. Pension Fund v. Bell,*
   43 Misc. 3d 1024(A), 2014 WL 1272280 (Sup. Ct. N.Y. Cty. Mar. 28, 2014)..............*passim*

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.,*
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) ..............................................................................2, 7

*In re Bed Bath & Beyond Inc. Deriv. Litig.,*
   2007 WL 4165389 (D.N.J. Nov. 19, 2007) .......................................................................14

*Braddock v. Zimmerman,*
   906 A.2d 776 (Del. 2006) ...................................................................................................3

*Brautigam v. Blankfein,*
   8 F. Supp. 3d 395 (S.D.N.Y. 2014)........................................................................ 8, 21, 29

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000) ...........................................................................16, 17, 18, 19, 30

*Calma v. Templeton,*
   114 A.3d 563 (Del. Ch. 2015)...........................................................................................30

*Campbell v. Weihe Yu*,
    25 F. Supp. 3d 472 (S.D.N.Y. 2014)..................................................................................27

*In re Career Educ. Corp. Deriv. Litig.*,
    2007 WL 2875203 (Del. Ch. Sept. 28, 2007) ........................................................14

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996)..................................................................................22

*Cent. Laborers' Pension Fund v. Dimon*,
    2014 WL 3639185 (S.D.N.Y. July 23, 2014) ..........................................2, 12, 27

*Cent. Laborers' Pension Fund v. Dimon*,
    638 F. App'x 34 (2d Cir. 2016) ..............................................................................23

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d, 106 (Del. Ch. 2009)..................................................................22, 24, 27

*In re Citigroup Inc. S'holders Litig.*,
    2003 WL 21384599 (Del. Ch. June 5, 2003)........................................................24

*City of Providence v. Dimon*,
    2015 WL 4594150 (Del. Ch. July 29, 2015) ..........................................6, 7, 8, 13

*City of Providence v. Dimon*,
    134 A.3d 758, 2016 WL 758186 (Del. Feb. 25, 2016) ..........................................8

*City of Roseville Emps.' Ret. Sys. v. Dimon*,
    Index No. 650294/2012 (Sup. Ct. N.Y. Cty. Jan. 16, 2015), Dkt. No. 67...........2, 12

*City of Roseville Emps.' Ret. Sys. v. Dimon*,
    Index No. 650294/2012, (Sup. Ct. N.Y. Cty. July 12, 2012), Dkt. No. 11 ...........12

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984) ..................................................................................................6

*Dana v. Morgan*,
    232 F. 85 (2d Cir. 1916) ..................................................................................13, 14

*David B. Shaev Profit Sharing Account v. Armstrong*,
    2006 WL 391931 (Del. Ch. Feb. 13, 2006)..........................................................23

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)..........................................................................17, 22

*In re Dow Chemical Co. Deriv. Litig.*,
    2010 WL 66769, at *13 (Del. Ch. Jan. 11, 2010) ..........................................27, 28

*Dubroff v. Wren Holdings, LLC*,
  2010 WL 3294219 (Del. Ch. Aug. 20, 2010) ......................................................29

*In re E.F. Hutton Banking Practices Litig.*,
  634 F. Supp. 265 (S.D.N.Y. 1986)...................................................................19

*Elfenbein v. Gulf & W. Indus., Inc.*,
  590 F.2d 445 (2d Cir. 1978) (per curiam) .........................................................16

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017) ...........................................................................17

*Fink v. Komansky*,
  2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) .......................................................29

*Freedman v. Adams*,
  2012 WL 1345638 (Del. Ch. Mar. 30, 2012) ......................................................19

*Fuchs Family Trust v. Parker Drilling Co.*,
  2015 WL 1036106 (Del. Ch. Mar. 4, 2015) ........................................................14

*In re Gen. Motors Co. Deriv. Litig.*,
  2015 WL 3958724 (Del. Ch. June 26, 2015) .......................................................23

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
  2011 WL 4826104 (Del Ch. Oct. 12, 2011) ..................................................21, 24

*In re Goldman Sachs Mortg. Serv'g*,
  42 F. Supp. 3d 473 (S.D.N.Y. 2012).........................................................24, 28

*Grobow v. Perot*,
  539 A.2d 180 (Del. 1988) .............................................................................18

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003).........................................................................23

*Halpert Enters., Inc. v. Harrison*,
  362 F. Supp. 2d 426 (S.D.N.Y. 2005) .......................................................2, 16, 27

*Hanson v. Odyssey Healthcare, Inc.*,
  2007 WL 5186795 (N.D. Tex. Sept. 21, 2007)....................................................14

*Harben v. Dillard*,
  2010 WL 3893980 (E.D. Ark. Sept. 30, 2010) ....................................................14

*Harold Grill 2 IRA v. Chenevert*,
  2013 WL 3014120 (Del. Ch. June 24, 2013)........................................................26

*Henik v. LaBranche*,
   433 F. Supp. 2d 372 (S.D.N.Y. 2006) .................................................. 5, 6, 9, 15

*Honda Motor Co. v. Oberg*,
   512 U.S. 415 (1994) ..................................................................................14

*Howard v. Stature Elec. Inc.*,
   986 N.E.2d 911 (N.Y. 2013) ......................................................................10

*In re Hunter*,
   4 N.Y.3d 260 (2005) ................................................................................ 7, 8

*In re ITT Corp. Deriv. Litig.*,
   588 F. Supp. 2d 502 (S.D.N.Y. 2008) .......................................................23

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 808 (Del. Ch. 2005) ................................................................ 2, 18

*In re JPMorgan Chase & Co. Deriv. Litig.*,
   2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014) ...................................*passim*

*In re JPMorgan Chase & Co. Deriv. Litig.*,
   2014 WL 3778181 (S.D.N.Y. July 30, 2014) ............................................27

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991) ................................................................................ 5, 16

*Kernaghan v. Franklin*,
   2008 WL 4450268, at *10 (S.D.N.Y. Sept. 29, 2008) ..............................30

*La. Mun. Police Emps. Ret. Sys. v. Pandit*,
   2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009).................................. 17, 19, 21

*Laborers' Dist. Council Constr. Indus. Pension Fund v. Bensoussan*,
   2017 WL 462142 (Del. Feb. 13, 2017) ......................................................13

*In re Lear Corp. S'holder Litig.*,
   967 A.2d 640 (Del. Ch. 2008)............................................................... 20, 21

*LeBoyer v. Greenspan*,
   2007 WL 4287646 (C.D. Cal. June 13, 2007) ...........................................14

*Levine v. Smith*,
   591 A.2d 194 (Del. Ch. 1991)................................................................ 16, 17

*Logan v. Mateveevskii*,
   175 F. Supp. 3d 209 (S.D.N.Y. 2016) .........................................................9

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ...................................................................... 21, 28, 29

*Marrese v. Am. Acad. of Orthopedic Surgeons*,
   470 U.S. 373 (1985) .................................................................................. 4

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
   845 A.2d 1040 (Del. 2004) ...................................................................... 16, 17, 19

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) .................................................................... 4, 5

*MCG Capital Corp. v. Maginn*,
   2010 WL 1782271 (Del. Ch. May 5, 2010) ............................................. 30

*In re MGM Mirage Deriv. Litig.*,
   2014 WL 2960449 (D. Nev. June 30, 2014) ........................................... 14

*Monahan v. N.Y. City Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000) .................................................................... 7

*In re Morgan Stanley Deriv. Litig.*,
   542 F. Supp. 2d 317 (S.D.N.Y. 2008) ..................................................... 17

*O'Brien v. City of Syracuse*,
   54 N.Y.2d 353 (1981) .............................................................................. 7, 8

*O'Reilly v. Transworld Healthcare, Inc.*,
   745 A.2d 902 (Del. Ch. 1999) ................................................................. 29

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ..................................................................... 19

*Papilsky v. Berndt*,
   466 F.2d 251 (2d Cir. 1972) .................................................................... 14

*In re Pfizer Inc. S'holder Deriv. Litig.*,
   722 F. Supp. 2d 453 (S.D.N.Y. 2010) ..................................................... 30

*Carroll ex rel. Pfizer, Inc. v. McKinnell*,
   859 N.Y.S.2d 901, 2008 WL 731834 (Sup. Ct. N.Y. Cty. Mar. 17, 2008) .................. 6, 9, 11

*Pike v. Freeman*,
   266 F.3d 78 (2d Cir. 2001) ...................................................................... 5

*Pyott v. La. Mun. Police Emps.' Ret. Sys.*,
   74 A.3d 612, 616 (Del. 2013) .................................................................. 13

*Rahbari v. Oros*,
    732 F. Supp. 2d 367 (S.D.N.Y. 2010) ................................................................................28

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ...................................................................................................16

*Sagendorf–Teal v. Cty. of Rensselaer*,
    100 F.3d 270 (2d Cir. 1996) .................................................................................................9

*In re SAIC Inc. Deriv. Litig.*,
    948 F. Supp. 2d 366 (S.D.N.Y. 2013) ................................................................... 20, 25, 27

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ..............................................................................................................5

*Siegel v. Bell*,
    Index No. 652151 (Sup. Ct. N.Y. Cty. Apr. 23, 2013), Dkt. No. 45 ....................................2

*Siegel v. J.P. Morgan Chase & Co.*,
    2012 WL 8161652 (Sup. Ct. N.Y. Cty. Aug. 16, 2012).................................................*passim*

*Simon v. Becherer*,
    775 N.Y.S.2d 313 (App. Div. 2004) .................................................................................2, 27

*Smith v. Bayer*,
    564 U.S. 299 (2011) ............................................................................................................14

*In re Sonus Networks, Inc. S'holder Deriv. Litig.*,
    499 F.3d 47 (1st Cir. 2007).................................................................................................13

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) .............................................................................................23, 27

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
    11 N.Y.3d 105 (2008).............................................................................................................5

*Steinberg v. Dimon*,
    2014 WL 3512848 (S.D.N.Y. July 16, 2014) .............................................................*passim*

*Steiner v. Meyerson*,
    1995 WL 441999 (Del. Ch. July 19, 1995) .......................................................................29

*Strugala v. Riggio*,
    817 F. Supp. 2d 378 (S.D.N.Y. 2011).................................................................................18

*Tomczak v. Morton Thiokol, Inc.*,
    1990 WL 42607 (Del. Ch. Apr. 5, 1990).............................................................................20

*Trickey v. Brolick*,
2017 WL 2973983 (S.D.N.Y. Jul. 11, 2017) ........................................................17

*Levin ex rel. Tyco Int'l Ltd. v. Kozlowski*,
831 N.Y.S.2d 354, 2006 WL 3317048 (Sup. Ct. N.Y. Cty. Nov. 14, 2006) .....................9, 11

*UBS Secs. LLC v. Highland Capital Mgmt.*,
927 N.Y.S.2d 59 (App. Div. 2011) ..........................................................7

*In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*,
167 A.3d 513 (Del. Ch. 2017) (supp. op.) .....................................................12, 13

*In re Walt Disney Co. Deriv. Litig.*,
906 A.2d 27 (Del. 2006) ..................................................................21

*In re Walt Disney Co. Deriv. Litig.*,
907 A.2d 693 (Del. Ch. 2005) .............................................................29

*Wandel v. Dimon*,
Index No. 651830/2012 (Sup. Ct. N.Y. Cty. Jan. 23, 2014), Dkt. No. 78 ...................2, 12, 27

*Wietschner v. Dimon*,
32 N.Y.S.3d 77 (App. Div. 2016) .......................................................2, 6, 8, 27

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) .................................................................28

*Xiao Yang Chen* v. *Fischer*,
6 N.Y.3d 94 (2005) ......................................................................7

*Zucker v. Rubin*,
No. 651580/2011 (Sup. Ct. N.Y. Cty. July 23, 2014), Dkt. No. 62 ...........................8

**Statutes**

8 Del. C. § 102(b)(7) .....................................................................21

28 U.S.C. § 1738 ..........................................................................4

**Other Authorities**

Fed. R. Evid. 407 .........................................................................23

## INTRODUCTION

Four years ago, this shareholder derivative action was filed in federal court in Sacramento, California, against certain current and former directors of JPMorgan Chase & Co. ("JPMorgan," and with its subsidiaries, the "Company"), a Delaware corporation with its principal place of business in New York City. The action alleges that the defendants breached their fiduciary duties to JPMorgan in connection with its issuance and sale of residential mortgage-backed securities ("RMBS") in the period 2005 to 2007. Following two rounds of motion to dismiss briefing, and extensive jurisdictional discovery, the California court dismissed the federal securities law claim, determined that it lacked personal jurisdiction over the defendants with respect to the remaining state law claims, and transferred the action to this Court. Plaintiffs declined the opportunity to file another amended complaint, and Defendants now renew their motion to dismiss the remaining state law claims in Plaintiffs' second amended complaint (the "Complaint" or "Compl.") on two grounds:

First, this action should be dismissed because it is barred by the doctrines of res judicata and collateral estoppel. Three courts have dismissed derivative claims against the directors of JPMorgan based on JPMorgan's RMBS activities — including claims virtually identical to those alleged here — for failure to allege with particularity, as required by Federal Rule of Civil Procedure 23.1 and Delaware law, that demand on the JPMorgan Board of Directors (the "Board") should be excused. *See Steinberg v. Dimon*, 2014 WL 3512848, at *5 (S.D.N.Y. July 16, 2014); *Asbestos Workers Phila. Pension Fund v. Bell*, 43 Misc. 3d 1024(A), 2014 WL 1272280 (Sup. Ct. N.Y. Cty. Mar. 28, 2014), *aff'd*, 29 N.Y.S.3d 274 (App. Div. 2016); *Siegel v. J.P. Morgan Chase & Co.*, 2012 WL 8161652 (Sup. Ct. N.Y. Cty. Aug. 16, 2012), *aff'd*, 960 N.Y.S.2d 104 (App. Div.), *appeal denied*, 990 N.E.2d 135 (N.Y. 2013). All three decisions are final and unappealable and bar this action by the operation of both res judicata and collateral

1

estoppel.

Second, even if this action were not barred by the prior decisions, the Complaint should be dismissed because it similarly fails to allege adequately that demand on the Board to bring the litigation is futile and therefore excused.  Despite the Complaint's prolixity, it does not allege particularized facts showing that a majority of the current Board members are not independent or face a substantial likelihood of liability on a non-exculpated claim, and thus demand is excused. Plaintiffs allege nothing that would lead to a result different from the rulings in the three cases cited above and the ten other recent cases cited below in which courts have unanimously held that shareholder plaintiffs failed to allege that demand on the JPMorgan Board was excused as futile.[1]

These two fatal defects were not corrected during the years that Plaintiffs tried to justify their misguided strategy of filing suit in a wholly inappropriate court in California.  Plaintiffs' complaint got longer but no closer to alleging demand futility with particularity, and the preclusion bar was raised even higher as other derivative actions alleging the same claims were dismissed with prejudice.  This action should be dismissed as well.

---

[1] *See Wietschner v. Dimon*, 32 N.Y.S.3d 77 (App. Div.), *appeal denied*, 63 N.E.3d 70 (N.Y. 2016); *City of Roseville Emps.' Ret. Sys. v. Dimon*, Index No. 650294/2012 (Sup. Ct. N.Y. Cty. Jan. 16, 2015), Dkt. No. 67, *aff'd*, 22 N.Y.S.3d 850 (App. Div. 2016); *Cent. Laborers' Pension Fund v. Dimon*, 2014 WL 3639185, at *5 (S.D.N.Y. July 23, 2014), *aff'd*, 638 F. App'x 34 (2d Cir. 2016); So-Ordered Oral Arg. Tr., *Wandel v. Dimon*, Index No. 651830/2012 (Sup. Ct. N.Y. Cty. Jan. 23, 2014), Dkt. No. 78, *aff'd*, 23 N.Y.S.3d 200 (App. Div. 2016); So-Ordered Oral Arg. Tr., *Siegel v. Bell*, Index No. 652151 (Sup. Ct. N.Y. Cty. Apr. 23, 2013), Dkt. No. 45; *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (S.D.N.Y. Mar. 31, 2014), *reconsideration denied*, 2014 WL 3778181 (S.D.N.Y. July 30, 2014), *aff'd sub. nom. Wayne Cnty. Emps.' Ret. Sys. v. Dimon*, 629 F. App'x 14 (2d Cir. 2015); *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005), *aff'd on other grounds*, 906 A.2d 766 (Del. 2006); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005); *Simon v. Becherer*, 775 N.Y.S.2d 313 (App. Div. 2004).

## FACTUAL BACKGROUND

Plaintiffs purport to bring this action on behalf of nominal defendant JPMorgan, a Delaware corporation with its principal place of business in New York City.  ¶ 26 (all "¶" references herein are to the Complaint).  The individual defendants (the "Defendants") are current and former members of the Board of Directors of JPMorgan.  ¶¶ 28-40.  All of the Defendants currently serving on the Board (the "Director Defendants") are outside, non-management directors, with the exception of James Dimon, who is Chief Executive Officer and Chairman. *Id*.  As of the date the Complaint was filed on April 4, 2016 (the operative date for assessing demand futility, *see Braddock v. Zimmerman*, 906 A.2d 776, 785 (Del. 2006)), JPMorgan's eleven-member Board included ten non-management directors, two of whom joined the Board after the events at issue and are not named as defendants.  ¶¶ 29-32, 35, 38-40.

The Complaint asserts claims relating to the Company's creation and sale of subprime RMBS from 2005 through 2007.  ¶¶ 1, 119.  The Complaint alleges that in order to increase profitability the Company made an "aggressive change" in business strategy to originate and securitize RMBS (¶¶ 1, 11, 12, 119-122) and the Company sold RMBS containing mortgages that did not comply with the Company's underwriting guidelines or the Company's representations in RMBS registration statements (¶¶ 12-15, 142-156, 163-178).  The Complaint claims that the Defendants knew these representations were inaccurate (¶¶ 179-181), but alleges no particularized facts to support this bare conclusion (*see* Point II.C.3 below).  The Complaint asserts that as a result of alleged misrepresentations in the sale of RMBS, the Company has incurred substantial losses, including amounts paid to settle claims by federal and state regulators and private parties.  ¶¶ 17, 190-193.

The initial complaint in this action was filed in the Eastern District of California on

November 20, 2013, and the amended and consolidated complaint on March 3, 2014.  On

October 24, 2014, the court dismissed the action without prejudice for lack of personal

jurisdiction and, with respect to the claim brought pursuant Section 14 of the Securities

Exchange Act, for failure to state a claim.  Following extensive jurisdictional discovery,

Plaintiffs filed the current Complaint on April 5, 2016.  On June 30, 2017, the California court

(i) dismissed the Section 14 claim with prejudice, holding that it was barred by res judicata as a

result of the *Steinberg* decision, and (ii) determined that the court lacked personal jurisdiction

with respect to the remaining state law claims and transferred the action to this Court.  ECF No.

141.

## ARGUMENT

### I.    THIS ACTION IS BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL

The Complaint is the fourth attempt by JPMorgan shareholders to plead that pre-suit

demand would be futile based on allegations that the directors of JPMorgan are not independent

or face a substantial likelihood of liability arising out of the Company's RMBS-related activities.

The first three attempts were rejected by final judgments in:

- *Siegel v. J.P. Morgan Chase & Co.*, 2012 WL 8161652 (Sup. Ct. N.Y. Cty. Aug. 16, 2012), *aff'd*, 960 N.Y.S.2d 104 (App. Div.), *appeal denied*, 990 N.E.2d 135 (N.Y. 2013);

- *Asbestos Workers Philadelphia Pension Fund v. Bell*, 990 N.Y.S.2d 436, 2014 WL 1272280 (Sup. Ct. N.Y. Cty. Mar. 28, 2014) ("*Asbestos Workers*"), *aff'd*, 29 N.Y.S.3d 274 (App. Div. 2016); and

- *Steinberg v. Dimon*, 2014 WL 3512848, at *5 (S.D.N.Y. July 16, 2014).

Under the full faith and credit clause of the U.S. Constitution and 28 U.S.C. § 1738, New

York law determines whether its state courts' prior adjudications (*Siegel* and *Asbestos Workers*)

have res judicata or collateral estoppel effect.  *See Marrese v. Am. Acad. of Orthopedic*

*Surgeons*, 470 U.S. 373, 380 (1985); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).  New York law also determines the preclusive effect of the federal court decision (*Steinberg*) as to the state law claims.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-09 (2001) (holding that the preclusive effect of federal adjudications of state law claims in diversity cases is determined by the law of the state in which the court rendering the judgment sits); *In re Adamo*, 560 B.R. 642, 647 (Bankr. E.D.N.Y. 2016) (same with respect to federal court judgments on state law claims based on supplemental jurisdiction).[2]  As discussed below, there is no question that this action is duplicative of prior actions and should not proceed as it is barred by both res judicata and collateral estoppel.

### A.   Res Judicata Bars Plaintiffs' Claims

Under New York law, res judicata, or claim preclusion, "bars successive litigation based on the same transaction or series of connected transactions" if there is a "judgment on the merits" and "the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was."  *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008).  All of these elements are met here.

First, the demand futility dismissals in *Steinberg*, *Asbestos Workers*, and *Siegel* are final judgments on the merits for purposes of res judicata.  *Henik v. LaBranche*, applying New York law, held that a dismissal of a derivative complaint for failure to plead demand futility is a "judgment on the merits" for purposes of res judicata, because the demand requirement "is clearly a matter of 'substance' and not 'procedure.'"  433 F. Supp. 2d 372, 378-79 (S.D.N.Y. 2006) (quoting *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96-97 (1991)).  The court reasoned

---

[2] Even if federal preclusion law applied to *Steinberg*'s dismissal of the state law claims, the result is the same.  *See Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001) (noting there is no material difference between federal and New York preclusion principles); *Marvel*, 310 F.3d at 286 ("[T]here is no discernible difference between federal and New York law considering res judicata and collateral estoppel.").

that "if this were not the rule, shareholder plaintiffs could indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding." *Id*. at 380. *Henik*'s reasoning has been followed by the New York Appellate Division, the Delaware Court of Chancery, and the Delaware Supreme Court, all applying New York law. *Wietschner*, 32 N.Y.S.3d 77; *City of Providence v. Dimon*, 2015 WL 4594150, at *6 (Del. Ch. July 29, 2015), *aff'd*, 134 A.3d 758, 2016 WL 758186 (Del. Feb. 25, 2016).

Second, as a matter of law, Plaintiffs are in privity with the prior JPMorgan shareholder plaintiffs in *Steinberg*, *Asbestos Workers*, and *Siegel*. In derivative lawsuits, shareholders of a corporation are considered the same plaintiff for preclusion purposes because the corporation is the true plaintiff and the shareholder is merely "step[ping] into the corporation[']s shoes." *Henik*, 433 F. Supp. 2d at 380 (quoting *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528 (1984)); *City of Providence*, 2015 WL 4594150, at *7 ("Under New York law, a later stockholder asserting derivative claims on behalf of a corporation is considered to be the same plaintiff as a different stockholder asserting those claims on behalf of the corporation in a separate action."); *Carroll ex rel. Pfizer, Inc. v. McKinnell*, 859 N.Y.S.2d 901, 2008 WL 731834, at *7-8 (Sup. Ct. N.Y. Cty. Mar. 17, 2008).

Third, the claims asserted here arise out of the same transaction or series of transactions as the claims in *Steinberg*, *Asbestos Workers*, and *Siegel*. The Complaint alleges the same breaches of fiduciary duties by the Defendants related to the same conduct, namely the issuance and sale of RMBS during the years 2005 to 2007, as was alleged in those prior three cases. *See* Second Am. Compl., *Siegel* ("Siegel Compl.," Baskin Decl. Ex. A); S'holder Deriv. Compl., *Asbestos Workers* ("Asbestos Compl.," Baskin Decl. Ex. B); Verified S'holder Deriv. Compl.,

*Steinberg* ("Steinberg Compl.," Baskin Decl. Ex. D).

New York applies the "same transaction" test broadly.  Claims arising from the "same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981); *accord Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000).  Res judicata applies "not only to claims actually litigated but also to claims that could have been raised in prior litigation."  *In re Hunter*, 4 N.Y.3d 260, 269 (2005); *see also UBS Secs. LLC v. Highland Capital Mgmt.*, 927 N.Y.S.2d 59, 64 (App. Div. 2011) (res judicata bars "'all other claims arising out of the same transaction or series of transactions,'" including "'alternative theories'" or variant facts (citation omitted)).  Distinct events are treated as part of the same "series of transactions" when they are "related in time, space, origin, or motivation" or where the claims at issue would "form a convenient trial unit."  *Xiao Yang Chen* v. *Fischer*, 6 N.Y.3d 94, 100 (2005).  Here, Plaintiffs' claims relate to the same RMBS transactions as the prior suits, and any variations in the specific alleged facts or legal theories cannot overcome the application of res judicata.  *See, e.g.*, *In re Bear Stearns Cos.*, 763 F. Supp. 2d at 545-46 (res judicata applied where plaintiffs alleged different time period, additional acts of alleged wrongdoing, and new breaches of duty of loyalty and care than raised in earlier litigation, since both litigations were associated with same transaction).

The breadth of claim preclusion in derivative actions is settled.  In *City of Providence*, the Delaware Court of Chancery, applying New York res judicata law, dismissed a derivative suit related to anti-money laundering ("AML") compliance based on prior dismissals pursuant to Rule 23.1 of derivative claims arising from the Madoff Ponzi scheme and related AML compliance issues.  *See* 2015 WL 4594150, at *7.  As the Court reasoned, "[u]nder New York's

'transactional analysis' approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy[,]' . . . notwithstanding 'that the theories involve materially different elements of proof.'"  *Id.* (quoting *Hunter* and *O'Brien*, quotation marks and citations omitted).  The Delaware Supreme Court adopted the Court of Chancery's opinion in affirming the dismissal.  134 A.3d 758.  Similarly, in *Wietschner*, the New York Supreme Court dismissed on res judicata and collateral estoppel grounds a derivative suit alleging wrongdoing related to Madoff and deficiencies in the Company's AML programs, due to the *City of Providence* dismissal.  In affirming the dismissal, the Appellate Division determined that res judicata applied to all claims that were or could have been brought relating to the Company's AML compliance, noting:  "The claims in this action and in the federal actions arose from the same series of transactions . . . , had the same origin and formed a convenient trial unit.  That the complaints set forth different theories of recovery and that the claims in the instant action were not actually raised in the federal actions present no impediments to application of the doctrine."  32 N.Y.S.3d at 78-79 (citations omitted).[3]

Judge Mueller's prior order dismissing Plaintiffs' federal Section 14(a) claim as barred by res judicata also supports dismissal of the remaining claims.  That order held that *Steinberg's* dismissal of a Section 14(a) claim on demand futility grounds precluded Plaintiffs' Section 14(a) claim because *Steinberg* was based on the same claim or transaction that was or could have been alleged in this case, was a final judgment on the merits, and the Plaintiffs are in privity with the shareholder who litigated *Steinberg*.  *See* ECF No. 141 at 16-26.  These prior determinations,

---

[3] *See also, e.g.*, *Brautigam v. Blankfein*, 8 F. Supp. 3d 395, 401-03 (S.D.N.Y. 2014), *aff'd sub nom Brautigam v. Dahlback*, 598 F. App'x 53 (2d Cir. 2015); Notice of Entry of Oral Arg. Tr. at 27-29, *Zucker v. Rubin*, No. 651580/2011 (Sup. Ct. N.Y. Cty. July 23, 2014), Dkt. No. 62.

which apply equally to the state law claims, control as law of the case. *See, e.g.*, *Sagendorf–Teal v. Cty. of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996); *Logan v. Mateveevskii*, 175 F. Supp. 3d 209, 229 (S.D.N.Y. 2016).

### B.    Collateral Estoppel Precludes Plaintiffs from Relitigating Demand Futility

Just as res judicata (or claim preclusion) bars relitigation of derivative claims arising from JPMorgan's RMBS activities, collateral estoppel (or issue preclusion) prevents the relitigation of the issue of demand futility, which was necessarily decided in *Steinberg*, *Asbestos Workers*, and *Siegel*.

Collateral estoppel blocks repetitive, overlapping derivative lawsuits that seek to circumvent the demand requirement by relitigating the issue of demand excusal. *See, e.g.*, *Carroll*, 2008 WL 731834, at *7-8 (plaintiffs asserting derivative claims in state court cannot relitigate the same demand futility allegations that were previously adjudicated by a federal court in a lawsuit brought by different shareholder plaintiffs); *Henik*, 433 F. Supp. 2d at 380-82; *Levin ex rel. Tyco Int'l Ltd. v. Kozlowski*, 831 N.Y.S.2d 354, 2006 WL 3317048, at *7-9, 13 (Sup. Ct. N.Y. Cty. Nov. 14, 2006) (prior dismissal by federal court on the ground that plaintiff shareholders did not have standing to bring a derivative suit precluded two other shareholders from raising the same issue), *aff'd*, 357 N.Y.S.2d 987 (App. Div. 2007); *Asbestos Workers Local 42 Pension Fund v. Bammann*, 2015 WL 2455469 (Del. Ch. May 22, 2015) (applying New York collateral estoppel law to preclude relitigation in Delaware of shareholder derivative suit regarding London trading losses at JPMorgan where similar suit was previously dismissed in New York), *aff'd*, 132 A.3d 749, 2016 WL 353210 (Del. 2016).

To determine whether a plaintiff is collaterally estopped to relitigate an issue, two factors are considered:  (1) "whether the identical issue was necessarily decided in the prior action . . . and is decisive of the present action" and (2) "whether the party who is attempting to relitigate

the issue had a full and fair opportunity to contest it in the prior action or proceeding." *Howard v. Stature Elec. Inc.*, 986 N.E.2d 911, 913-14 (N.Y. 2013). The party opposing the application of collateral estoppel bears the burden on the second factor. *Id.* at 914.

Three prior cases have finally determined the issue that Plaintiffs seek to litigate here: whether demand on JPMorgan's Board is excused with respect to claims arising out of the Company's RMBS losses. The Complaint's RMBS demand futility allegations mirror those made unsuccessfully in the *Siegel*, *Asbestos Workers* and *Steinberg* complaints:

1. JPMorgan directors were allegedly financially incentivized to issue RMBS to maximize JPMorgan's profits and their own compensation. Siegel Compl., ¶¶ 17-18, 20-26; Asbestos Compl., ¶¶ 4-5, 7, 19, 89-90, 94, 96, 100, 107-09, 117, 177-84, 199(a); Steinberg Compl., ¶¶ 4, 33-36, 46, 102-108, 145-146, 149-154, 173, 207-208, 254; Compl. ¶¶ 11, 40, 44-45, 48, 68-71, 118-23, 158, 162, 175, 187-88, 288-91, 294.

2. JPMorgan directors allegedly were aware of weaknesses in the subprime market and the Company's issuance of RMBS but either participated in, authorized or permitted the sale of RMBS. Siegel Compl. ¶¶ 17-18, 20-22; Asbestos Compl. ¶¶ 6-8, 10, 18-20, 42, 58, 77, 85-94, 96-103, 112-13, 118-20, 122-26, 133-36, 141-47, 193, 199(a)-(d), 199(f), 200(a)-(h), 201(a)-(e); Steinberg Compl. ¶¶ 99, 149-152, 207-208, 248; Compl. ¶¶ 43-45, 48, 50, 142-155, 164-177, 181-188, 295, 302.

3. JPMorgan's alleged wrongful conduct was evidenced by the November 2013 settlement with the DOJ and other federal and state authorities, which imposed substantial liabilities on the Company. Steinberg Compl. ¶¶ 5, 97, 172; Asbestos Workers Brief at 1, 9 (Baskin Decl. Ex. C); Compl. ¶¶ 17, 190-193.

4. JPMorgan's acquisitions of Bear Stearns and Washington Mutual significantly increased the Company's exposure to liability arising from RMBS. Siegel Compl. ¶¶ 23-25; Asbestos Compl. ¶¶ 18, 99-100, 104-06, 109, 111-12; Steinberg Compl. ¶¶ 120-124, 142; Compl. ¶¶ 137-40, 183-184.

5. JPMorgan directors allegedly allowed or caused the filing of incomplete and misleading disclosures with the SEC, failed to disclose the weaknesses of RMBS underwriting and due diligence to investors, or otherwise released misleading public statements. Siegel Compl. ¶¶ 18-19, 22; Asbestos Compl. ¶¶ 42, 110, 115, 126-28, 130-32, 140, 142, 150, 166-72, 199(e); Steinberg Compl. ¶¶ 42, 212, 248-249; Compl. ¶¶ 6-11, 13-14, 46, 118, 124-125, 162-170, 177-180, 265-284, 303-313, 333-337, 341, 344, 348.

6. Several of the JPMorgan directors were members of various Board committees, and allegedly face a substantial likelihood of liability because they allegedly were aware of the wrongdoing based on their membership on those committees. Asbestos Compl.

¶¶ 45-57, 59-62, 94, 98, 105, 108, 116, 118-20, 123-26, 198, 200-03; Steinberg Compl. ¶¶ 216, 219, 222, 227, 231, 234, 238; Compl. ¶¶ 297-313, 325-337, 342, 346, 350.

7. JPMorgan directors allegedly will not cause the Company to sue themselves or one another due to their supposed risk of personal liability.  Siegel Compl. ¶ 32(b); Asbestos Compl. ¶¶ 20, 196-97, 204-06; Steinberg Compl. ¶¶ 210, 212, 214, 217, 221, 225, 229, 233, 236; Compl. ¶ 353.

Because the "identical issue" of demand futility with respect to RMBS-related claims was decided in three prior actions, it cannot be relitigated here.  Indeed, Plaintiffs' prior complaint constituted an almost exact, word-for-word copy of the RMBS-related allegations of the Steinberg Complaint.  *Compare* Steinberg Compl. ¶¶ 5, 97-98, 101-172, *with* ECF No. 29 ¶¶ 4-5, 115-188, 190.  Collateral estoppel requires an identity of issue, not an identity of facts, and the relevant issue is whether demand is futile and therefore excused.  "'[E]ven if there are variations in the facts,'" collateral estoppel bars relitigation of the issue of demand futility once it has been decided.  *Levin*, 2006 WL 3317048, at *8-9 (citation omitted); *accord Carroll*, 2008 WL 731834, at *4-5, 7-8.  *See also Arduini v. Hart*, 774 F.3d 622, 629-30 (9th Cir. 2014) (applying Nevada preclusion law (essentially the same as New York's) and holding that "the underlying demand futility *allegations* need not be identical before issue preclusion applies.  The question is, rather, whether the 'same ultimate issue' [demand futility] was decided in the prior case.").

The Complaint also challenges the independence of JPMorgan Board members based on allegations regarding the directors' compensation, the Company's extension of credit or financial services to the directors or companies with which they are affiliated, and personal or business relationships among the Board members.  Again, these same allegations were made and rejected as insufficient to plead demand futility in *Steinberg*.  2014 WL 3512848, at *5.  In particular, both Steinberg and Plaintiffs here alleged that:

- Director Defendants Bell, Bowles, Burke, Crown, Jackson, Raymond, and Weldon lack independence because they received compensation and stock awards in exchange for their service.  *Compare* Steinberg Compl. ¶¶ 215, 218, 223, 226, 230, 235, 237, *with*

Compl. ¶¶ 71, 314, 338, 343, 347, 349.

• Director Defendants Bowles, Burke, Crown, Jackson, and Weldon lack independence because they or affiliated companies received loans, extensions of credit, financial services, charitable contributions, or leased office space from JPMorgan. *Compare* Steinberg Compl. ¶¶ 220, 224, 228, 232, 239, *with* Compl. ¶¶ 315, 316, 339, 340, 344, 351.

• The Director Defendants lack independence because they are dominated "by the Individual Defendants." *Compare* Steinberg Compl. ¶ 241, *with* Compl. ¶ 353.

The *Steinberg* court rejected these allegations, and Plaintiffs are estopped to relitigate them.[4]

### C. The Delaware Court of Chancery's Recent *Wal-Mart* Opinion Is Inapplicable, Inconsistent with Second Circuit Precedent, and Unpersuasive

Plaintiffs will likely point to a recent Delaware Court of Chancery supplemental opinion recommending (in response to a question on remand) that the Delaware Supreme Court adopt a rule pursuant to which a foreign judgment in a derivative action would not bind stockholders in subsequent derivative litigation in Delaware courts unless and until the prior action survived a Rule 23.1 demand futility motion to dismiss. *See In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, 167 A.3d 513 (Del. Ch. 2017) (supp. op.). This recommendation, which is currently under review by the Delaware Supreme Court, is not controlling in this Court (or even in Delaware), is contrary to New York state and federal precedent, and is not a persuasive basis for departing from the established jurisprudence on preclusion.

In conformance with the approach followed generally in collateral estoppel cases, in determining the preclusive effect of demand futility dismissals by other state or federal courts,

---

[4] These same boilerplate allegations of lack of director independence were also alleged as a basis for demand futility in at least four other recent cases against the JPMorgan Board (involving issues other than RMBS), and in each case they were held inadequate by New York state and federal courts. *See Cent. Laborers'*, 2014 WL 3639185, at *5; *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824, at *7; So-Ordered Oral Arg. Tr., *Wandel*, Index No. 651830/2012, Dkt. No. 78; *City of Roseville Emps.' Ret. Sys. v. Dimon*, Index No. 650294/2012, slip op. at 11-12 (Sup. Ct. N.Y. Cty. July 12, 2012), Dkt. No. 11 & slip op. at 6 (Sup. Ct. N.Y. Cty. Jan. 16, 2015), Dkt. No. 67, *aff'd*, 22 N.Y.S.3d 850 (N.Y. App. Div. 2016).

the Delaware courts have consistently applied the law of the rendering jurisdiction to hold that a successive stockholder is bound by the judgment, provided that the prior representation was adequate.  *See Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 616 (Del. 2013); *Laborers' Dist. Council Constr. Indus. Pension Fund v. Bensoussan*, 2017 WL 462142 (Del. Feb. 13, 2017), *aff'g* 2016 WL 3407708 (Del. Ch. June 14, 2016); *City of Providence*, 2015 WL 4594150; *Asbestos Workers Local 42*, 2015 WL 2455469.  The lower court in *Wal-Mart* recommended that the Delaware Supreme Court overrule its prior decisions and adopt a new rule applicable solely to demand futility:  that a foreign judgment dismissing a derivative action for failure to plead demand futility will not bind other shareholder plaintiffs in subsequent derivative litigation in the Delaware courts.  The purported basis for this recommendation was the federal Due Process Clause; yet notably, the court did not find that the existing rule violated due process, but only that the proposed rule would "better safeguard" such rights.  167 A.3d at 516.

The Delaware lower court's view on the application of the federal Due Process Clause is not binding in this Court, is inconsistent with Second Circuit and other federal precedent, and is not persuasive.  Two federal courts of appeals have expressly considered the question and held that preclusion of successive stockholder plaintiffs on the issue of demand futility satisfies due process if the first action provided adequate representation.  *Arduini*, 774 F.3d at 633-37; *In re Sonus Networks, Inc. S'holder Deriv. Litig.*, 499 F.3d 47, 64-65 & n.10 (1st Cir. 2007).  And over a century ago, the Second Circuit recognized that shareholders were in privity and bound by a judgment in a derivative suit brought by another shareholder.  *Dana v. Morgan*, 232 F. 85, 90 (2d Cir. 1916).  These authorities, combined with the long line of cases applying preclusion

principles to bar successive stockholder plaintiffs from relitigating demand futility,[5] rebuts the notion that collateral estoppel in derivative cases offends due process. *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 430 (1994) ("As this Court has stated from its first Due Process cases, traditional practice provides a touchstone for constitutional analysis.").

The lower court decision in *Wal-Mart* rests on a faulty analogy between class and derivative actions and a mistaken application of the Supreme Court's holding in *Smith v. Bayer*, 564 U.S. 299 (2011), to derivative actions. *Smith* did not even decide a due process question (*id.* at 308 n.7) but held simply that an absent class member was not a "party" to the litigation before certification, and thus was not bound by a prior ruling denying class certification. *Id.* at 313-16. But in a derivative action, the real party in interest whose rights are adjudicated—the corporation—is always present as a necessary party and is bound by any rulings in the action to the same extent any party would be, including any ruling on demand futility requiring that the company surrender control of the litigation to stockholders. As the Second Circuit held in *Dana*, "[t]he stockholder does not bring such a suit because his rights have been directly violated, or because the cause of action is his, or because he is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court." 232 F. at 90 (quotation marks and citation omitted). This does not "elevate[] a stockholder's right to sue on behalf of the corporation to the level of a stockholder's [individual] claim." *Papilsky v. Berndt*, 466 F.2d 251, 256 (2d Cir. 1972).

---

[5] In addition to the cases cited above, *see, e.g.*, *Harben v. Dillard*, 2010 WL 3893980 (E.D. Ark. Sept. 30, 2010); *Hanson v. Odyssey Healthcare, Inc.*, 2007 WL 5186795 (N.D. Tex. Sept. 21, 2007); *LeBoyer v. Greenspan*, 2007 WL 4287646 (C.D. Cal. June 13, 2007); *In re Bed Bath & Beyond Inc. Deriv. Litig.*, 2007 WL 4165389 (D.N.J. Nov. 19, 2007); *In re MGM Mirage Deriv. Litig.*, 2014 WL 2960449 (D. Nev. June 30, 2014); *Fuchs Family Trust v. Parker Drilling Co.*, 2015 WL 1036106 (Del. Ch. Mar. 4, 2015); *In re Career Educ. Corp. Deriv. Litig.*, 2007 WL 2875203 (Del. Ch. Sept. 28, 2007).

The approach recommended in *Wal-Mart* would have significant negative consequences. As Judge Sweet warned, it would permit "shareholder plaintiffs [to] indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding." *Henik*, 433 F. Supp. 2d at 380. Lawyers who can be compensated only if demand is excused would be incentivized to relitigate the issue in multiple jurisdictions in the hope of finding a court that will allow the suit to proceed. The departure from the normal rules of issue preclusion proposed in *Wal-Mart* has no basis in precedent and would engender unnecessary relitigation.

***

In sum, controlling New York law provides derivative plaintiffs with no leeway to file repetitive or overlapping actions. As long as the later lawsuit arises from the same transaction or series of transactions as the former, it is barred by res judicata, regardless of whether the subsequent plaintiff changes the facts, theories, or causes of action or whether its claim was actually previously raised. Similarly, with respect to collateral estoppel, the subsequent suit is barred as long as the issue of demand futility was previously and adequately litigated. This suit should be dismissed.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE THAT DEMAND ON THE BOARD IS EXCUSED

Even if the multiple prior rulings set forth above did not bar Plaintiffs' claims, the Complaint would still be subject to dismissal because it fails to allege adequately that pre-suit demand on the Board is excused, as required by Rule 23.1. If this Court reaches that issue, it should follow the unanimous precedent of *Steinberg*, *Asbestos Workers*, *Siegel*, and at least ten other decisions that have held that demand on the JPMorgan Board is not excused. *See* n.1, *supra*.

**A.  Demand Is Required Unless the Complaint Alleges Particularized Facts Raising a Reasonable Doubt That a Majority of the Directors Could Have Independently and Disinterestedly Considered the Demand**

Under Delaware law, "directors of a corporation and not its shareholders manage the business and affairs of the corporation, and accordingly, the directors are responsible for deciding whether to engage in derivative litigation." *Levine v. Smith*, 591 A.2d 194, 200 (Del. Ch. 1991), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  Pursuant to Federal Rule of Civil Procedure 23.1, and bedrock principles of Delaware law,[6] shareholders cannot divest directors of their authority to control a corporation's legal claims unless they plead with particularity facts raising a reasonable doubt that a majority of the board could have independently and disinterestedly considered the demand.  *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004).  "The demand rule is meant 'to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.'"  *Halpert Enters.*, 362 F. Supp. 2d at 430 (quoting *Elfenbein v. Gulf & W. Indus., Inc.*, 590 F.2d 445, 450 (2d Cir. 1978) (per curiam)).

Given the authority reposed in the elected directors to control a corporation's legal claims, Delaware law imposes an "onerous" burden on plaintiffs who allege that a demand would have been futile.  *Levine*, 591 A.2d at 207.  When a complaint alleges that a board improperly failed to take action, demand is excused only if "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d 927, 934 (Del.

---

[6] The substantive law of the state in which the corporation is incorporated (here, Delaware) governs a shareholder's ability to sue on behalf of the corporation.  *See Halpert Enters., Inc.*, 362 F. Supp. 2d at 430; *see also Kamen*, 500 U.S. at 108-09.

1993); *In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2008). Courts have repeatedly emphasized that "conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Brehm*, 746 A.2d at 255. *See also Trickey v. Brolick*, 2017 WL 2973983, at *3 (S.D.N.Y. Jul. 11, 2017) ("Rule 23.1 requires a plaintiff to plead particularized allegations on a 'detailed fact-intensive, director-by-director' basis."); *La. Mun. Police Emps. Ret. Sys. v. Pandit*, 2009 WL 2902587, at *11 (S.D.N.Y. Sept. 10, 2009) ("General and conclusory allegations . . . are insufficient to raise a reasonable doubt as to the independence of [director defendants]."). Moreover, "a derivative complaint must plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007); *see also F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017) (same).

### B.    Plaintiffs Fail to Plead That a Majority of the Board Members Lack Independence or Have an Interest in the Transactions at Issue

Courts presume that outside directors are independent and faithful to their fiduciary duties. *Levine*, 591 A.2d at 205-06; *see also In re Am. Int'l Grp., Inc. Deriv. Litig.*, 415 F. App'x 285, 286 (2d Cir. 2011) ("'[D]irectors are entitled to a presumption that they were faithful to their fiduciary duties,' and a shareholder seeking to bring a derivative suit bears the burden of '"overcom[ing] that presumption.'" (quoting *Beam*, 845 A.2d at 1048-49)). The Complaint does not allege that any members of the Board had a financial interest in the transactions at issue. As to independence, ten of the eleven members of JPMorgan's Board are outside directors, and thirteen decisions have held them to be disinterested and independent. *See* n.1, *supra*. Two of the ten outside directors are not named as defendants, and thus their independence is not even challenged. As for the other eight directors, the Complaint offers only the kind of generic and conclusory allegations that have been rejected repeatedly by New York and Delaware courts.

*Receipt of Loans and Credit*.  Plaintiffs assert that certain Director Defendants lack independence because they or companies with which they are associated received unspecified loans, extensions of credit, or financial advisory services from JPMorgan.  ¶¶ 315, 316, 339, 344, 351.  However, as the Delaware Court of Chancery observed in rejecting similar allegations, "JPMC is a national commercial and investment bank.  That it provided financing to large American companies should come as no shock to anyone.  Yet this is all that the plaintiffs allege."  *In re J.P. Morgan Chase*, 906 A.2d at 822; *see also In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824, at *7 (rejecting allegations that "extensive personal loans/extensions of credit" excuse demand because conclusory allegations did not provide the necessary "'particularized facts about the materiality of the relationship[s] in question that would create a reasonable doubt about the independence of the [] directors.'" (citation omitted)).

*Director Fees*.  The assertion that demand is excused because the Directors receive compensation for their service (¶¶ 314, 338, 343, 347, 349) is also plainly insufficient.  Allegations that "directors are paid for their services as directors . . . , without more, do not establish any financial interest" to excuse demand.  *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm*, 746 A.2d 244; *see also In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 432 (S.D.N.Y. 2010) (rejecting allegation that directors "would not take any action against themselves or fellow directors that would put their compensation in jeopardy"), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).  Indeed, if a director's receipt of fees were sufficient to create a conflict and thus excuse a pre-suit demand, then "every director who receives director's fees would be biased," and demand on the board always would be excused.  *Strugala v. Riggio*, 817 F. Supp. 2d 378, 387 (S.D.N.Y. 2011) ("'Such a rule would eviscerate the rationale for ever making a demand and would strip Rule 23.1 of all meaning.'"

(citation omitted)).  Instead, a complaint must allege with particularity that the alleged benefit received by the director is "material" and is significant enough "*in the context of the director's economic circumstances*, as to have made it improbable that the director could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest."  *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (emphasis in original).  The Complaint offers no such allegations.

*Director Stock Compensation.*  Plaintiffs also claim that the Director Defendants lack independence because they were improperly motivated to increase the Company's profitability to enhance the value of their stock compensation.  ¶¶ 294.  But efforts to increase overall profitability and the price of JPMorgan's stock are consistent with the interests of *all* shareholders and cannot excuse demand.  *See In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986).

*Dominance by "Individual Defendants."*  The Complaint makes the conclusory allegation that the JPMorgan Board is dominated "by the Individual Defendants" (¶ 353), but does not allege particularized facts showing that any director's decision-making is so dominated by an interested director that he or she "would be more willing to risk his or her reputation than risk the relationship with the interested director."  *Beam*, 845 A.2d at 1052; *Freedman v. Adams*, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012) (noting a "shorthand shibboleth of 'dominated and controlled directors' is insufficient" to state a claim of demand futility (quoting *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), *abrogated on other grounds by Brehm*, 746 A.2d at 254)), *aff'd*, 58 A.3d 414 (Del. 2013); *Pandit*, 2009 WL 2902587, at *11 (same).

### C.    Plaintiffs Fail to Plead with Particularity that a Majority of the Board Face a Substantial Likelihood of Liability

Faced with an overwhelming majority of independent directors (at least ten of eleven),

the Complaint asserts that demand is excused because the Director Defendants face a substantial likelihood of personal liability in this lawsuit.  Delaware and New York courts have repeatedly held that demand is not excused merely by the expedient of naming all directors as defendants. *See, e.g.*, *Aronson*, 473 A.2d at 818; *In re JPMorgan Chase & Co.*, 2014 WL 1297824, at *7 n.8 (collecting cases).  Instead, demand may be excused based on allegations of wrongdoing by directors only in the "rare" case where the complaint alleges with particularity facts showing that a majority of the directors engaged in such "egregious" misconduct that they face not simply a "mere threat" but a "substantial likelihood of director liability."  *Aronson*, 473 A.2d at 815; *see also Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 367 (Del. 2006); *In re SAIC Inc. Deriv. Litig.*, 948 F. Supp. 2d 366, 377 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. App'x 54 (2d Cir. 2014).  The Complaint fails to do so.

        1.     **The Complaint Does Not Plead with Particularity a Claim for Breach of the Fiduciary Duty of Care, Which in Any Event Is Barred by the Exculpatory Provision in JPMorgan's Charter**

"Even where it is possible to hold directors responsible for a breach of the duty of care, Delaware law requires that directors have acted with gross negligence," and the definition of gross negligence in Delaware corporate law is "extremely stringent."  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651-52 (Del. Ch. 2008).  The definition is so "strict that it imports the concept of recklessness into the gross negligence standard," requiring a showing of the director's "'reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason.'"  *Id*. at 652 n.45 (quoting *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990)).  Plaintiffs' Complaint does not come close to meeting this standard.

        Even if Plaintiffs could do so, JPMorgan's shareholders have adopted a charter provision that exculpates directors for any breach of the fiduciary duty of care.  Delaware law permits

shareholders to adopt a charter provision "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director," with exceptions for breach of the director's duty of loyalty or bad faith. 8 Del. C. § 102(b)(7). In accordance with this section, JPMorgan's certificate of incorporation provides that to the extent permitted by Delaware law, "no director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." Baskin Decl. Ex. E, at 5 (art. 6(1)).

This Section 102(b)(7) exculpatory provision presents a "substantial impediment" to any claim of "likely personal liability" and greatly increases Plaintiffs' already onerous burden. *See Pandit*, 2009 WL 2902587, at *7 n.5; *see also In re Lear Corp.*, 967 A.2d at 647, 653; *Blankfein*, 2009 WL 1422868, at *7-8. For example, in *In re Goldman Sachs Group., Inc. Shareholder Litigation*, the court held, in light of the corporation's exculpatory provision, that in order to plead demand futility "the Plaintiffs must also plead particularized facts that demonstrate that the directors acted with scienter; *i.e.*, there was an 'intentional dereliction of duty' or 'a conscious disregard' for their responsibilities, amounting to bad faith." 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011) (citation omitted). Under Delaware law, a claim even of gross negligence is "unavailing" in the face of an exculpatory provision. *Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001); *see also Stone*, 911 A.2d at 369-70; *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64-65 (Del. 2006). As explained below, this Complaint falls far short of pleading a non-exculpated claim.

>        2.        The Complaint Fails To Plead with Particularity That the Director Defendants Face a Substantial Likelihood of Liability for Breach of the Fiduciary Duty of Loyalty Based on a Failure of Oversight

The Complaint does not challenge specific actions of the Director Defendants but instead claims that they failed in their duty of oversight because they did not implement internal controls

or enabled the Company's allegedly wrongful conduct through their failure to supervise.  *E.g.*, ¶¶ 11-15, 43-48, 156-159, 163, 185, 286, 288-290, 300-305, 307, 331-333.  Because claims for breach of the duty of care are exculpated by JPMorgan's charter, Plaintiffs can only excuse demand if they adequately allege a claim for breach of the fiduciary duty of loyalty based on a bad-faith failure to oversee the affairs of the corporation.  But this is "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  To establish such a claim, a plaintiff must show:  "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  *Stone*, 911 A.2d at 370.  It requires a showing that the directors consciously disregarded their responsibilities, such that they have the "mindset of a disloyal director—bad faith—because their indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance."  *Desimone*, 924 A.2d at 935; *see also Stone*, 911 A.2d at 369-70; *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d, 106, 124-26 (Del. Ch. 2009) (rejecting claims due to failure of particularized pleading of disloyalty and bad faith).

        a.     The Complaint Does Not Allege That JPMorgan "Utterly Failed" To Implement Any System of Internal Controls, But Instead Affirms that Such a System Was in Place

The Complaint makes no allegation that JPMorgan lacked a system of internal controls, but instead pleads the contrary:  it describes in detail internal control processes and reporting systems at the Company, including oversight committees established by the Board, and further alleges that the Audit Committee and Risk Policy Committee met on a "frequent basis."  *See,*

*e.g.*, ¶¶ 298-299, 306, 326-330, 350; *see also* ¶¶ 144-155, 185 (alleging existence of internal controls that employees evaded).  These mechanisms of board oversight preclude a finding of the "sustained or systematic failure" that is essential to a failure-of-oversight claim.  *See Guttman v. Huang*, 823 A.2d 492, 506-07 (Del. Ch. 2003) (rejecting claim for failure to plead "critical" facts, such as "contentions that the company lacked an audit committee," or that it "had an audit committee that met only sporadically and devoted patently inadequate time to its work").  Thus, Plaintiffs have not pled that the "directors utterly failed to implement any reporting or information system or controls" as required by Delaware law.  *Stone*, 911 A.2d at 370; *see In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *14-15 (Del. Ch. June 26, 2015) (complaint fell "short of pleading that the Board utterly failed to implement any reporting or information system or controls" where it alleged that controls existed but were insufficient); *Cent. Laborers' Pension Fund v. Dimon*, 638 F. App'x 34, 38 (2d Cir. 2016) ("[T]he [*Stone*] standard's plain language could not be any clearer—'any' simply does not mean 'reasonable.'").[7]

> **b.** **The Complaint Fails To Allege That the Director Defendants Consciously Ignored "Red Flags"**

Where, as here, controls are in place but a plaintiff alleges that directors acted in bad faith by deliberately ignoring their oversight responsibilities, the plaintiff must plead "particularized facts suggesting that the board was presented with 'red flags' alerting it to potential misconduct" that they consciously and deliberately ignored.  *David B. Shaev Profit Sharing Account v.*

---

[7] The allegations that the Board later enhanced governance processes (¶¶ 280-282, 309-311, 334, 336-337) do not demonstrate a prior lack of sufficient processes; moreover, they negate a finding that the Board acted in bad faith.  *South v. Baker*, 62 A.3d 1, 18 (Del. Ch. 2012); *see also In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502, 512 (S.D.N.Y. 2008) (noting that established controls, even if allegedly ineffective, do not show that directors utterly failed to implement any report or information system or controls sufficient to bring a *Caremark* claim).  In any case, such enhancements cannot be used to prove negligence or other culpable conduct.  *See* Fed. R. Evid. 407 ("Subsequent Remedial Measures").

*Armstrong*, 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006), *aff'd*, 911 A.2d 802 (Del. 2006); *see also In re Citigroup Inc.*, 964 A.2d at 128.  General or conclusory allegations are insufficient. *In re Citigroup Inc. S'holders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) ("'[r]ed flags' are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer"), *aff'd*, 839 A.2d 666 (Del. 2003).

The Complaint sets forth no particularized factual allegations demonstrating that the Director Defendants learned about and consciously ignored red flags of wrongdoing related to RMBS.  On the contrary, Plaintiffs' allegations of Board knowledge are similar to those repeatedly rejected by courts as insufficient to plead demand futility in derivative suits arising from RMBS.  In *In re Goldman Sachs Mortgage Servicing Shareholder Derivative Litigation*, the court held that allegations that the directors "knew from various sources, including their own internal reporting structures, about the decline of the residential mortgage industry and the deteriorating quality of subprime mortgages" did not sufficiently allege the directors' knowledge of purported misrepresentations to investors.  42 F. Supp. 3d 473, 479 (S.D.N.Y. 2012). Similarly, in *In re Citigroup Inc. Shareholder Derivative Litigation*, the court found that knowledge of "signs of a deterioration in the subprime mortgage market, or even signs suggesting that conditions could decline further, is not sufficient to show that the directors were or should have been aware of any wrongdoing at the Company or were consciously disregarding a duty somehow to prevent Citigroup from suffering losses."  964 A.2d at 115, 128.  *See also In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *20-21 (company sale of, or taking short position in, RMBS did not put board on notice of wrongful conduct).

Plaintiffs attempt to obscure the Complaint's lack of particularized allegations with lengthy recitations of immaterial detail that have nothing to do with the Director Defendants,

including many pages of descriptions of mortgage underwriting and RMBS generally (¶¶ 73-117), the JPMorgan subsidiaries involved in those business activities (¶¶ 129-140), and alleged wrongdoing by those subsidiaries (¶¶ 141-142, 162-176, 179-187, 189-193).  Plaintiffs describe alleged actions by certain bank employees (¶¶ 144-146, 148, 151-153, 155, 185), loan officers (¶¶ 148-149, 151-153), underwriters (¶¶ 148, 150, 153-154, 156), sales and account managers (¶¶ 142-143, 160), branch and regional managers (¶¶ 149-150, 153), bank "Managing Directors" (¶¶ 6, 300-301, 321, 331), and a third party diligence firm (¶¶ 164-166, 168-171).  The Complaint relies heavily on the Statement of Facts that accompanied the November 2013 settlement with the Department of Justice, but that document does not include a single reference to the Director Defendants or provide any support for Plaintiffs' conclusory assertion that reports made to "Executive Directors" or "Managing Directors" (not members of the Board) were provided to the Board or any Board committee.  *See* ¶¶ 6, 300-301, 321, 331.  *See, e.g.*, *In re SAIC Inc. Deriv. Litig.*, 948 F. Supp. 2d at 383 (refusing to infer director malfeasance based on admissions in the statement of responsibility accompanying a deferred prosecution agreement concerning company and management misconduct).

Plaintiffs offer only the conclusory assertion that "Defendants knowingly authorized or recklessly allowed JPMorgan to engage in substantial wrongdoing in the subprime mortgage market" (¶ 43; *see also* ¶¶ 11, 19, 45, 47-48, 50, 147), without any particularized allegations as to what any of the Director Defendants knew, or when or how they learned about the supposed wrongdoing.  Similarly, allegations that the Director Defendants were motivated to increase the Company's profitability (as directors are supposed to do for the benefit of all shareholders) and that they must have known about the wrongdoing because of the purported "significance" of subprime RMBS to the Company's business (*see, e.g.*, ¶¶ 43-48), fail to set forth a single factual

allegation that the Director Defendants knew about misconduct in the issuance of RMBS alleged in the Complaint.[8]

Instead of pleading with particularity, Plaintiffs rely on improper inferences or conclusions, all of which have been rejected by courts.  Courts do not infer that if wrongdoing occurred at a company the directors must have known of it.  As the Supreme Court of Delaware has observed, "directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both."  *Stone*, 911 A.2d at 373.  Accordingly, in *Stone*, the court affirmed the dismissal of a derivative complaint for failure to plead with particularity that the directors were aware of red flags indicating a systematic failure of their compliance program and policies even after the Company had paid $50 million in fines and penalties and was investigated by three agencies and the U.S. Attorney for various violations.  *Id.*; *see also Harold Grill 2 IRA v. Chenevert*, 2013 WL 3014120, at *2-3 (Del. Ch. June 24, 2013) (holding that plaintiff failed to plead that demand was excused even though the company was fined $55 million and agreed to change its compliance practices after it violated U.S. export regulations because the complaint did not adequately plead that the directors knowingly caused the corporation to violate the law).

Next, Plaintiffs assert that certain Director Defendants knew about the misconduct

---

[8] Public statements by Company representatives after the relevant activities took place (¶¶ 122, 157, 175, 177, 387-389) do not show that the Director Defendants knew of misconduct in the issuance of RMBS at the time.  Nor does the April 2008 report from the Federal Reserve Bank of New York citing deterioration in the quality of the Company's mortgage portfolio as a result of "'loosened underwriting standards'" and the need to "'strengthen [its] exposure . . . framework.'" ¶ 176.  Even if the Board was aware of this April 2008 report (which the Complaint does not allege), it post-dated the alleged misconduct.  Plaintiffs incorrectly attempt to extend the time period for the alleged wrongdoing by mischaracterizing the Statement of Facts agreed to by the Company in connection with its settlement with the Department of Justice as "outlin[ing] how [JPMorgan] failed to disclose risks of buying RMBS from 2005 to 2008." ¶ 6.  That document refers only to the period 2005 to 2007.  *See* Compl. Ex. A.

because they were members of Board committees charged with oversight. *See* ¶¶ 297-313, 325-337, 342, 346, 350. Such knowledge cannot be inferred from committee membership. *See South*, 62 A.3d at 17 ("As numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1"); *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 3778181, at *1 n.3 (S.D.N.Y. July 30, 2014) (same); *Campbell v. Weihe Yu*, 25 F. Supp. 3d 472, 483 (S.D.N.Y. 2014) (same). Accordingly, these allegations fail to plead any substantial risk of liability.

Plaintiffs also suggest that unrelated misconduct, occurring over a 20-year period (¶¶ 52-67), demonstrates that the Board must have known of and consciously ignored misconduct related to RMBS.[9] Courts have rejected such blunderbuss efforts to plead demand futility: *In re Citigroup* concluded that the plaintiffs "utterly failed to show how Citigroup's involvement with the financial scandals at Enron has any relevance to Citigroup's investments in subprime securities," 964 A.2d at 129; *In re Dow Chemical Co. Derivative Litigation* held that past instances of misconduct were insufficient to alert the board to weaknesses in controls and to current or future violations, 2010 WL 66769, at *13 (Del. Ch. Jan. 11, 2010); and *In re SAIC* rejected the argument that the board's knowledge of wrongdoing in unrelated programs should have alerted the board to problems with the program at issue, 948 F. Supp. 2d at 387.

---

[9] Courts have already dismissed derivative complaints against JPMorgan officers and directors arising out of these unrelated events. *See Halpert Enters., Inc.*, 362 F. Supp. 2d 426 (Enron); *Simon*, 775 N.Y.S.2d 313 (Enron); *In re JPMorgan Chase & Co. Deriv. Litig.*, 2014 WL 1297824 (London whale); *Wandel*, Index No. 651830/2012 (London Whale); *Siegel*, Index No. 652151 (London whale); *Steinberg*, 2014 WL 3512848 (electricity market, Madoff, credit card debt, "Sons and Daughters" program); *Cent. Laborers'*, 2014 WL 3639185 (Madoff); *Wietschner*, 32 N.Y.S.3d 77 (Madoff).

3.    The Complaint Does Not Allege with Particularity That the Director Defendants Face a Substantial Likelihood of Liability for Breach of Fiduciary Duty Based on Alleged Misrepresentations

The Complaint makes the conclusory allegation that "[e]ach of the Defendants also breached his or her duty of loyalty and candor by concealing JPMorgan's involvement in the illegal RMBS sales through fraudulent and misleading representations and through the concealment of material facts." ¶ 358. This allegation is insufficient to plead demand futility.

First, claims against directors based on alleged misrepresentations are exculpated under Section 102(b)(7) and are insufficient to excuse demand absent particularized allegations that the directors had knowledge that the representations were untrue. *Malpiede*, 780 A.2d at 1086 & n.31; *see also Dow Chem. Co.*, 2010 WL 66769, at *10 (no substantial likelihood of liability because complaint did not allege that directors knew "'disclosures or omissions were false or misleading'" (citation omitted)); *In re Goldman Sachs Mortg. Serv'g*, 42 F. Supp. 3d at 486 (demand futility not adequately alleged because the complaint did not adequately allege that the directors knew of the misrepresentations in the sale of RMBS). The Complaint lacks any particularized allegations that any, much less each, of the Director Defendants knew that representations were false when made.

Second, the Complaint fails to identify any false or misleading representations by the Director Defendants. Plaintiffs allege that JPMorgan's 2006 Form 10-K misrepresented the Company's underwriting standards for mortgage loans (¶ 125), but they do not identify any particular inaccurate statement in that document.

Third, the Complaint does not allege particularized facts showing that each Director Defendant was involved in the preparation of the challenged disclosures. Merely signing financial reports or other SEC filings (¶ 125) is not sufficient to show a substantial likelihood of liability. *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008); *Rahbari v. Oros*, 732 F. Supp. 2d

367, 380 (S.D.N.Y. 2010).  The Complaint either makes no mention of the Director Defendants in connection with the disclosures or offers only conclusory assertions that they "failed to disclose" defects in mortgage loans (¶ 13).  These conclusory allegations cannot excuse demand. *See Fink v. Komansky*, 2004 WL 2813166, at *7 (S.D.N.Y. Dec. 8, 2004) (rejecting allegations that defendants "caused" the company to file misleading statements as "suppositions not substantiated by any facts"); *Brautigam*, 8 F. Supp. 3d at 406 (finding demand not excused because the allegations did not make clear "'how the board was actually involved in creating or approving the statements'" and there were no allegations of bad faith (citation omitted)).

Fourth, the Complaint fails to identify how the alleged misrepresentations caused damage to JPMorgan, much less "actual quantifiable damages," as required by Delaware law.  *See O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 917 (Del. Ch. 1999) (a claim for breach of fiduciary duty arising out of alleged disclosure violations not in connection with a request for stockholder action must "plead causation and identify actual quantifiable damages"); *Dubroff v. Wren Holdings, LLC*, 2010 WL 3294219, at *5 n.25 (Del. Ch. Aug. 20, 2010) (same); *Malpiede*, 780 A.2d at 1086-87 (in order to avoid dismissal, a claim for breach of the duty of disclosure must allege, among other things, "'how the omission caused injury'").

### 4.    Plaintiffs' Remaining State Law Claims Do Not Give Rise to a Substantial Likelihood of Director Liability

Nor do Plaintiffs' remaining state law claims give rise to a substantial likelihood of director liability.  A corporate waste claim (Count II) only arises where a board authorizes action "on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange."  *Steiner v. Meyerson*, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995); *see also In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) ("[W]aste is a rare 'unconscionable case[] where directors irrationally squander or give away corporate assets.'"

(quoting *Brehm*, 746 A.2d at 263) (second alteration in original)), *aff'd*, 906 A.2d 27. The Complaint alleges the Director Defendants committed waste "by paying or approving the payment of executive and/or director compensation based on the illegal conduct described herein." ¶ 370. But this claim is not pled with particularity and cannot overcome the high hurdle that Delaware law imposes for challenging compensation awards. *See Brehm*, 746 A.2d at 263. A board's decision as to compensation is "'rarely second-guess[ed] . . . because the size and structure of executive compensation are inherently matters of judgment,'" and thus a claim of waste with respect to compensation will lie only where the award "is so disproportionately large as to be unconscionable." *In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d at 443 (citation omitted); *see also Kernaghan v. Franklin*, 2008 WL 4450268, at *10 (S.D.N.Y. Sept. 29, 2008).

The claim for unjust enrichment (Count III) is insufficient because the only benefit identified by Plaintiffs is that the Director Defendants received compensation (¶ 373), an allegation that could be levelled against every director of a public company. Absent allegations of fact indicating a causal relationship between the "benefit" and the challenged conduct, the Complaint does not allege a substantial likelihood of liability on this claim. *In re Pfizer Inc. S'holder Deriv. Litig.*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010); *see also MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *25 (Del. Ch. May 5, 2010). This claim should also be dismissed because it does not state a separate cause of action but is duplicative of the defective fiduciary duty claim. *See Calma v. Templeton*, 114 A.3d 563, 591-92 (Del. Ch. 2015).

## CONCLUSION

For all of the foregoing reasons, Nominal Defendant JPMorgan and the Individual Defendants respectfully request that the Court grant their motion to dismiss the Complaint.

Dated: New York, New York
      November 20, 2017

Respectfully submitted,

s/ Stuart J. Baskin
Stuart J. Baskin
Jaculin Aaron
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022-6069
Tel.: (212) 848-4000
Facsimile: (212) 848-7179
Email:  sbaskin@shearman.com
        jaaron@shearman.com

*Attorneys for Defendants James A. Bell; Crandall C. Bowles; Stephen B. Burke; James S. Crown; Timothy P. Flynn; Ellen V. Futter; Laban P. Jackson, Jr.; David C. Novak; Lee R. Raymond; and William C. Weldon*

s/ Gary W. Kubek (on consent)
Gary W. Kubek
Jennifer R. Cowan
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Facsimile: (212) 909-6836
Email:  gwkubek@debevoise.com
        jrcowan@debevoise.com

*Attorneys for Nominal Defendant JPMorgan Chase & Co. and Defendants James Dimon, William B. Harrison, Jr., and Robert I. Lipp*