**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------- X
IN RE JPMORGAN CHASE             :
DERIVATIVE LITIGATION            :
                                 :
                                 :
                                 :
------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/21/2018

No. 17 Civ. 5066 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS RONALD A. HARRIS, RICHARD RATCLIFF, and JEFFREY SHLOSBERG:
    Alexander E. Barnett
    Mark C. Molumphy
    Joseph W. Cotchett
    Alexandra P. Summer
    Toriana S. Holmes
    COTCHETT, PITRE & McCARTHY, LLP
    George Donaldson
    LAW OFFICES OF GEORGE DONALDSON
    Peter E. Borkon
    Steve W. Berman
    HAGENS BERMAN SOBOL SHAPIRO LLP
    Francis A. Bottini, Jr.
    Yury A. Kolesnikov
    BOTTINI & BOTTINI, INC.
    Roger A. Dreyer
    Stacey L. Roberts
    Stephen F. Davids
    Stanley P. Fleshman
    DREYER BABICH BUCCOLA WOOD CAMPORA, LLP
    Brian S. Kabateck
    Joshua H. Haffner
    KABATECK BROWN KELLNER LLP
    Gerald Maltz
    Peter T. Limperis
    HARALSON, MILLER PITT, FELDMAN & McNALLY, PLC

FOR DEFENDANTS JAMES A. BELL, CRANDALL C. BOWLES, STEPHEN B. BURKE, JAMES S. CROWN, TIMOTHY P. FLYNN, ELLEN V. FUTTER, LABAN P. JACKSON, JR., DAVID C. NOVAK, LEE R. RAYMOND, and WILLIAM C. WELDON:
    Stuart J. Baskin
    Jaculin Aaron
    SHEARMAN & STERLING LLP

1

FOR NOMINAL DEFENDANT JPMORGAN CHASE & CO. and DEFENDANTS JAMES
DIMON, WILLIAM B. HARRISON, JR., and ROBERT I. LIPP:
    Gary W. Kubek
    Jennifer R. Cowan
    DEBEVOISE & PLIMPTON LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendants JPMorgan Chase & Co. ("JPMorgan"), Jamie Dimon, James A. Bell, Crandall C. Bowles, Stephen B. Burke, James Schine Crown, Ellen Futter, William B. Harrison, Jr., Laban P. Jackson, Jr., Robert I. Lipp, David C. Novak, Lee R. Raymond, William C. Weldson, and Timothy P. Flynn (together "Defendants") to dismiss the consolidated amended shareholder derivative complaint (the "amended complaint"). For the reasons stated below, Defendants' motion is GRANTED and the Clerk of Court is respectfully directed to close this case.

## I. Background

### A. Factual Background

Unless otherwise noted, the following facts and allegations are drawn from the amended complaint. For the purposes of this motion, the Court accepts the factual allegations in the complaint as true and draws reasonable inferences in the plaintiff's favor. See Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015). Plaintiffs Ronald A. Harris and Richard Ratcliff, from California, and Jeffrey Shlosberg, from New Jersey (together, "Plaintiffs"), are shareholders of JPMorgan

2

stock. (Am. Compl. ¶¶ 23-25, ECF No. 122 (filed Apr. 28, 2016).) Defendant JPMorgan is a financial holding company incorporated in Delaware with its principal place of business located in New York. (Id. ¶ 26.)  Defendant Jamie Dimon ("Dimon") is the current CEO, President, and Chairman of the Board of JPMorgan. (Id. ¶ 28.)  Defendants James A. Bell, Crandall C. Bowles, Stephen B. Burke, James Schine Crown, Ellen Futter, William B. Harrison, Jr., Laban P. Jackson, Jr., Robert I. Lipp, David C. Novak, Lee R. Raymond, William C. Weldon, and Timothy P. Flynn (together, with Dimon, the "Director Defendants") are current and former directors of JPMorgan. (Id. ¶¶ 29-40.)

Plaintiffs allege that in 2005, Defendants decided to establish a greater presence in the residential mortgage-backed securities ("RMBS") market to improve JPMorgan's "mediocre" financial performance. (Id. ¶ 119.)  From 2006 to 2007, JPMorgan nearly doubled its securitizations of residential mortgage loans. (Id. ¶ 141.)  To generate this amount of securities, JPMorgan incentivized its mortgage loan origination arm to pump out subprime mortgage loans to high risk borrowers, loosened underwriting standards, and pressured appraisers to generate a large volume of subprime mortgage loans with inflated dollar figures. (Id.)  These poor-quality mortgages were then included in JPMorgan securitizations which were fraudulently marketed to investors as high quality investments. (Id.)

3

Plaintiffs allege that internal documents and statements from executives, including Dimon, confirm JPMorgan's deficient underwriting practices. (Id. ¶¶ 142, 157.)  JPMorgan's drive to securitize large volumes of mortgage loans contributed to the absence of internal controls, which, in turn, caused JPMorgan to issue registration statements and prospectuses that included untrue statements of material facts and omitted material facts, specifically regarding JPMorgan's deteriorating underwriting standards and use of fraudulent marketing to sell subprime RMBS. (Id. ¶ 163.)  Plaintiffs allege that the Director Defendants knew that the company was securitizing defective loans and selling the resulting high-risk securities to investors. (Id. ¶ 169.)  Plaintiffs also allege that a majority of the loans in JPMorgan's RMBS portfolio came from California originators and that JPMorgan's subprime mortgage business was primarily targeted at risky California mortgages. (Id. ¶¶ 222, 239.)

Plaintiffs contend that the Director Defendants caused JPMorgan to issue its 2011 and 2012 Proxy Statements (the "Proxy Statements"), which contained false statements regarding the Board's role in oversight of management, including its review of internal controls and risk management. (Id. ¶¶ 263, 266, 270, 273.)  The falsity of the statements in the Proxy Statements is evidenced by the fact that the Director Defendants had received internal reports beginning in 2011 indicating that the Board's

oversight of risk management was materially deficient with respect to JPMorgan's RMBS business. (Id. ¶ 280.) The Proxy Statements also urged shareholders to re-elect the directors because they were allegedly independent, competent, and had provided diligent and effective oversight of management and the risks facing JPMorgan. (Id. ¶¶ 264, 271.) Although shareholders included proposals for an independent director in both Proxy Statements, Defendants encouraged shareholders to vote against the proposal because they claimed that the Board's leadership structure already provided the independent leadership and oversight of management sought by the proposals. (Id. ¶¶ 267-268, 275-276.) Based on the false statements in the Proxy Statements, the directors were re-elected and the shareholder proposals were defeated. (Id. ¶¶ 265, 279.)

On August 7, 2013, JPMorgan issued a Form 10-Q in which it acknowledged that the U.S. Attorney's Office for the Eastern District of California had concluded that JPMorgan violated federal securities laws in connection with its securitization and sale of subprime RMBS offerings issued during 2005 to 2007. (Id. ¶ 3.) On November 15, 2013, JPMorgan announced a $4.5 billion settlement with twenty-one major institutional investors, and four days later announced a $13 billion settlement with the DOJ and other government agencies. (Id. ¶ 5.) Approximately $300 million of the settlement funds were

5

allocated to investors from California. (Id.)  As part of the settlement, JPMorgan admitted that between 2005 and 2007, it falsely marketed and sold compromised RMBS to investors without warning them that the RMBS did not meet the corporation's internal securitization standards. (Id. ¶¶ 6, 300, 332.)

Plaintiffs allege that Defendants exposed JPMorgan to financial risk through the corporation's RMBS business by destabilizing internal underwriting standards, fraudulently marketing RMBS, and concealing material information from investors. (Id. ¶¶ 141, 290.)  According to the amended complaint, Director Defendants breached their fiduciary duties to JPMorgan and its shareholders by failing to implement any meaningful reporting or controls regarding mortgage loan origination and securitization, and abdicating their responsibilities to properly supervise and adequately oversee JPMorgan's subprime mortgage business. (Id. ¶¶ 356-364.) Defendants' decision to push forward into the subprime mortgage loan origination and securitization business without adequate safeguards, policies, and procedures was made because it increased Defendants' personal profits, while exposing JPMorgan to substantial civil penalties, fines and settlements, and potential criminal exposure. (Id. ¶ 288.)

Plaintiffs allege that at the time this action was initially filed, demand on the Board of Directors would have

been futile since at least five of the ten members of the Board were not disinterested and could not have fairly and impartially evaluated any demand made on the Board. (Id. ¶ 293.) The Director Defendants were not disinterested because they had the largest financial incentive for engaging in the misconduct alleged, had final supervision and oversight over JPMorgan's business operations, and they face a substantial likelihood of liability for their individual misconduct. (Id. ¶¶ 294, 305, 308, 317, 320, 325, 333, 341, 345, 348.)

Plaintiffs allege against Defendants three California state claims: breach of fiduciary duty, corporate waste, and unjust enrichment; and one federal claim under Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), which, as discussed below, has been dismissed. (Id. ¶¶ 356-395.)

### B. Procedural History

Plaintiffs filed their original complaint in the Eastern District of California on November 20, 2013 and an amended complaint on March 3, 2014. (See Compl., ECF No. 1 (filed Nov. 20, 2013); Am. Compl., ECF No. 29 (filed Mar. 3, 2014).) On May 16, 2014, Defendants moved to dismiss. (See Mot. to Dismiss, ECF No. 48 (filed May 16, 2014).) The court granted Defendants' motion to dismiss on October 24, 2014, holding that the court did not have sufficient personal jurisdiction over Defendants under Federal Rule of Civil Procedure 12(b)(2) and that

Plaintiffs had failed to state a claim for violation of § 14(a) of the Exchange Act under Federal Rule of Civil Procedure 12(b)(6), and allowed Plaintiffs leave to amend. (See Order, ECF No. 69 (filed Oct. 24, 2014).)  After extensive jurisdictional discovery, Plaintiffs filed the amended complaint on April 28, 2016.  On June 10, 2016, Defendants moved to dismiss. (See Mot. to Dismiss, ECF No. 123 (filed June 10, 2016).)

On June 30, 2017, the court granted in part Defendants' motion to dismiss (the "June 30 Order"), holding that Plaintiffs' derivative federal securities claim was barred by res judicata based on Judge Crotty's decision in Steinberg v. Dimon, No. 14 Civ. 688(PAC), 2014 WL 3512848 (S.D.N.Y. July 16, 2014).  In Steinberg, a shareholder brought a derivative suit against JPMorgan and fifteen JPMorgan directors for breach of fiduciary duty, wasting corporate assets, unjust enrichment, and violation of Section 14(a) of the Exchange Act, in connection with, among other things, JPMorgan's involvement in the subprime RMBS market. See Steinberg, 2014 WL 3512848, at *1.  Judge Crotty dismissed the complaint for insufficiently pleading demand futility under Rule 23.1. Id. at *5.  In its June 30 Order, the court found that the demand futility dismissal in Steinberg was a final judgment on the merits because Judge Crotty treated the pleading deficiency as a fatal error that could not be cured. (See Order at 20-21, ECF No. 141 (filed June

8

30, 2017) [hereinafter June 30 Order].)  Second, the court found that the parties in this action and in Steinberg are in privity because (1) a majority of courts have held that shareholders asserting derivative suits are in privity, and (2) the defendants in both actions are in privity because "[a]ltering the mix of director-defendants does not bar claim preclusion unless defendants named only in the second suit either were inadequately represented in the prior suit or were unknown or unavailable at the time of the prior suit." (Id. at 22.)  Third, the court held that the Section 14(a) claims in both this action and in Steinberg relied on allegations that JPMorgan's 2011 and 2012 Proxy Statements contained false or misleading statements regarding effective oversight of risk management, and therefore arise from the same basic events. (Id. at 25-26.)  Thus, because Plaintiffs' federal claim could have been brought in Steinberg, the district court held that claim preclusion barred Plaintiffs from bringing their Section 14(a) claim in this action and dismissed the federal claim with prejudice. (Id. at 26.)

The court also ruled that the Eastern District of California did not have personal jurisdiction over the individual Defendants as to the remaining state law fiduciary claims because Plaintiffs did not sufficiently allege facts showing Defendants purposefully directed their activities towards California. (Id. at 31.)  Rather than dismissing

9

Plaintiffs' state law claims, the court transferred the action to this Court, where personal jurisdiction is not contested. (Id. at 32-33.)  On January 17, 2018, Defendants moved to dismiss the amended complaint, arguing that Plaintiffs' state law claims are precluded by res judicata and collateral estoppel based on demand futility dismissals in three prior shareholder derivative actions, including Steinberg,[1] and, in the alternative, Plaintiffs have failed to adequately allege that demand on the Board is excused. (See Defs.' Mem of L. in Supp. of Mot. to Dismiss, ECF No. 154 (filed Jan. 17, 2018).)

## II. Discussion

### A. Res Judicata

#### 1. Legal Standard

"[W]hen determining the claim-preclusive effect of a dismissal by a federal court sitting in diversity, courts apply federal common law, which is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" In re Mirena IUD Prod. Liab. Litig., No. 13-MC-2434 CS, 2015 WL 5037100, at *3 (S.D.N.Y. Aug. 26, 2015) (quoting Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)); see also NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.

---

[1] Defendants argue that Plaintiffs' state law claims are also precluded by the demand futility dismissals in Siegel v. J.P. Morgan Chase & Co., 2012 WL 8161652 (N.Y. Sup. Ct. Aug. 16, 2012), and Asbestos Workers Philadelphia Pension Fund v. Bell, 43 Misc.3d 1204(A) (N.Y. Sup. Ct. 2014).

10

Supp. 2d 134, 143 (S.D.N.Y. 2003) ("[W]hen a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits."). Steinberg was decided by a Court in this district, thus, New York res judicata law applies.[2]

Under New York law, res judicata, or claim preclusion, "bars successive litigation based on the same transaction or series of connected transactions" if there is a "judgment on the merits" and "the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." People ex rel. Spitzer v. Applied Card Sys., Inc., 11 N.Y.3d 105, 122 (2008) (internal quotation marks omitted). The doctrine of res judicata prevents parties to the prior action or those in privity with them "from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994).

---

[2] Both parties concede that even if federal preclusion law applied to Steinberg's demand futility dismissal, the result is the same because there is no material difference between federal and New York law considering res judicata. (See Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 5 n.2; Pls.' Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 9 n.5.)

11

## 2. Analysis

The Court agrees that Plaintiffs' claims are barred by res judicata based on the demand futility dismissal in Steinberg. First, the dismissal in Steinberg was a final judgment on the merits. The court in Henik ex rel. LaBranche & Co. v. LaBranche held that dismissal of a derivative complaint for failure to plead demand futility is a "decision on the merits" for purposes of res judicata, because the demand requirement "is clearly a matter of 'substance' and not 'procedure.'" 433 F. Supp. 2d 372, 379 (S.D.N.Y. 2006) (quoting Kamen v. Kemper Fin Servs., Inc., 500 U.S. 90, 96-97 (1991). Further, Plaintiffs concede that the demand futility dismissal in Steinberg was a final judgment on the merits for purposes of res judicata. (See Oral Arg. Tr. 20:19-21:3.)

Second, the parties in Steinberg are in privity with the parties in this action. As to the shareholder plaintiffs, "the prevailing rule [is] that the shareholder in a derivative suit represents the corporation," and "if the shareholder can sue on the corporation's behalf, it follows that the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits." In re Sonus Networks, Inc., 499 F.3d 47, 64 (1st Cir. 2007). In Henik, the court held that different shareholders in separate derivative suits are in privity because "the true plaintiff in [derivative

12

suits] is the [] corporation." Henik, 433 F. Supp. 2d at 380; see also City of Providence v. Dimon, No. CV 9692-VCP, 2015 WL 4594150, at *7 (Del. Ch. July 29, 2015) ("Under New York law, a later stockholder asserting derivative claims on behalf of a corporation is considered to be the 'same plaintiff' as a different stockholder asserting those claims on behalf of the corporation in a separate action."). Accordingly, Plaintiffs and the plaintiff in Steinberg, Chaile Steinberg ("Steinberg"), are in privity for res judicata purposes.

As to the Director Defendants, Plaintiffs contend that Steinberg did not involve the same parties because "the Steinberg complaint named defendants that the Amended Complaint does not . . . and did not name three Director Defendants—Timothy Flynn, William Harrison, Jr., and Robert Lipp—named in the Amended Complaint." (Pls.' Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 12, ECF No. 156 (filed Jan. 17, 2018).) However, the doctrine of res judicata "bar[s] claims against parties not named in [a] prior suit." In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 763 F. Supp. 2d 423, 545 (S.D.N.Y. 2011); see also Cameron v. Church, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003) ("Res judicata operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants . . . does not entitle him to revive the previously-dismissed claims.").

13

Indeed, as the court noted in its June 30 Order, "[a]ltering the mix of director-defendants does not bar claim preclusion unless defendants named only in the second suit either were inadequately represented in the prior suit or were unknown or unavailable at the time of the prior suit." (June 30 Order at 22)[3]; see also Taylor v. Sturgell, 553 U.S. 880, 894 (2008) (nonparty may be bound by a judgment in another lawsuit in certain limited circumstances because she was adequately represented by someone with the same interests who was a party to that suit).  Plaintiffs do not argue that the Director Defendants named only in this action were unavailable when the plaintiff in Steinberg filed suit, nor that the Director Defendants named in the prior suit were inadequately represented.  As the court noted in its June 30 Order, the two suits were filed within one month of each other, which reinforces the conclusion that each Director Defendant named here was known and available at the time Steinberg was filed. (See June 30 Order at 22.)  Thus, the parties here are in privity with the parties in Steinberg.

Third and finally, the state law claims in this action arise from the same transaction or series of transactions as the claims in Steinberg.  Res judicata "applies not only to claims

---

[3] Cited at In re JPMorgan Chase Derivative Litig., 263 F. Supp. 3d 920 (E.D. Cal. 2017).

14

actually litigated but also to claims that could have been raised in the prior litigation." In re Hunter, 4 N.Y.3d 260, 269 (2005). Plaintiffs argue that res judicata does not bar their claims in this action because "the focus and factual allegations herein are distinct from those present in" Steinberg. (Pls.' Mem. of L. in Opp'n to Defs.' Mot to Dismiss at 13.)  However, "[u]nder New York's 'transactional analysis' approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" City of Providence, 2015 WL 4594150, at *7 (quoting In re Hunter, 4 N.Y.3d at 269).  Under New York law, courts use a "pragmatic test" to determine whether particular claims are part of the same transaction for res judicata purposes, analyzing "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage[.]" Xiao Yang Chen v. Fischer, 6 N.Y.3d 94, 100-01 (2005) (internal quotation marks and citation omitted).  Thus, the final inquiry of the res judicata analysis is not whether the claims in Steinberg are factually identical, but whether they arise from the same basic series of events.

In Steinberg, the plaintiff alleged that the Defendants breached their fiduciary duties by "abdicating their responsibilities to properly supervise and adequately oversee" JPMorgan's RMBS business and "allow[ing] JPMorgan to commit multiple fraudulent and deceptive acts in promoting and selling subprime RMBS." (Steinberg Compl. ¶ 99, Baskin Decl. Ex. D, ECF No. 155-4 (filed Jan. 17, 2018).)  Steinberg alleged that Defendants led investors to believe that JPMorgan had carefully evaluated the quality of the loans in their RMBS. (Id. ¶¶ 99, 162.)  However, in reality "JPMorgan systematically failed to fully evaluate the loans, largely ignored the defects that its limited review did uncover, and concealed from investors both the inadequacy of the company's review procedures and the defects in the underlying mortgage loans." (Id. ¶¶ 99, 108, 162.)  Steinberg alleged that JPMorgan's 2011, 2012, and 2013 Proxy Statements included materially false and misleading statements regarding the Board's role in risk oversight—including that "[r]obust risk management and compensation recovery policies deter excessive risk-taking and improper risk management"—because they did not disclose the true nature of JPMorgan's risk management structure. (Id. ¶¶ 174, 176, 183.)

Both Steinberg's claims and the state law claims in this action allege breach of fiduciary duties in connection with the issuance and sale of RMBS from 2005 to 2007, including

16

Defendants' failure to implement internal controls and appropriate underwriting practices, failure to exercise sufficient oversight and risk management, and participation in the issuance of fraudulent and misleading representations and omissions of material fact regarding JPMorgan's origination, securitization, and sale of RMBS. (Compare Am. Compl. ¶¶ 118-291, with Steinberg Compl. ¶¶ 96-201.)  Thus, Plaintiffs' state law claims could have been brought in Steinberg.

    Plaintiffs argue that the demand futility dismissal in Steinberg does not bar Plaintiffs' state law claims because the complaint in Steinberg did not include allegations regarding "the focus on the Defendants' conduct targeting California in their RMBS strategy" including "seeking out loan pools that originated in or were acquired by dubious California-based originators." (Pls.' Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 12-13.)  However, the California-specific allegations in the amended complaint do not bar the application of res judicata.  The allegations in Steinberg related to JPMorgan's RMBS activities throughout the United States. (See Steinberg Compl. ¶¶ 96, 157.)  Thus, any California-specific allegations arise from the same transaction or series of transactions as those in Steinberg—namely JPMorgan's nationwide RMBS activities, and the Board's oversight of those activities.  Indeed, the court held in its June 30 Order that "Plaintiffs' new

17

allegations do not show [D]efendants consciously decided to package more mortgage loans [in California] than in other states, or that any defendant specifically discussed, proposed or approved a California-focused policy." (June 30 Order at 31.) Accordingly, Plaintiffs' claims are barred by res judicata.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the amended complaint is GRANTED and Plaintiffs' claims are dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 153 and to close this case and remove it from the docket of this Court.

**SO ORDERED.**

Dated:  New York, New York
        May 21, 2018

                                                John F. Keenan
                                         United States District Judge